## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VERNON J. LEFTRIDGE, JR.,
    *Plaintiff*,

    v.

STATE OF CONNECTICUT JUDICIAL
BRANCH *et al.*,
    *Defendants*.

No. 3:22-cv-411 (JAM)

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

The plaintiff has filed a complaint *pro se* and *in forma pauperis* against the Connecticut Department of Social Services, the Connecticut Judicial Branch, several state court employees, state prosecutors, and other state employees for actions relating to the plaintiff's various child support and child custody cases. For the reasons set forth below, I will grant the defendants' motions to dismiss.

### BACKGROUND

The complaint spans 97 pages—not including 226 pages of exhibits—and numbers 361 paragraphs.[1] Here I recite only those alleged facts that appear relevant to this ruling and I assume these alleged facts to be true solely for purposes of this ruling.

Plaintiff Vernon J. Leftridge is a disabled African American and Native American male.[2] Leftridge has a minor child, R.L., who resides in Maryland, and an adult child, Juwan James Leftridge ("Juwan"), who resides in Maine.[3] His claims in this case revolve around custody and child support orders entered by the state courts of Connecticut and Maryland.

---

[1] *See* Doc. #18.
[2] *Id.* at 3 (¶¶ 6–7).
[3] *Id.* at 8 (¶¶ 20, 22).

In 2005, Norwich Superior Court Judge Cynthia Sweinton awarded Leftridge primary custody of Juwan.[4] At some point, David Gage, Chief Clerk of New London and Norwich Judicial Districts, along with Norwich Superior Court Deputy Chief Clerks Corinne McCarthy and Cara Parkinson, modified the court order to remove Leftridge's custody award and insert a $50 weekly child support requirement.[5] Leftridge and his attorney were "victims of severe racial discrimination, harassment, racism and unlawfully kicked out" of the Norwich Superior Courthouse by Gage and a Connecticut Assistant Attorney General.[6] The Appellate Court of Connecticut later vacated and remanded Judge Sweinton's order on the ground that Leftridge had not been served with Connecticut's motion to modify the child support obligation.[7] *See Leftridge v. Wiggins*, 44 A.3d 217, 220–21 (Conn. App. 2012).

Fast forward to 2017, when R.L.'s mother, Niambi Kafi Heyward, filed a paternity and support petition in Maryland.[8] Leftridge was not served with Heyward's petition and was not notified of the subsequent hearing.[9] On the date of the hearing, in which Connecticut Assistant Attorney General Andrea Gaines represented the State of Connecticut, Family Magistrate Judge David A. Dee ordered Heyward to file an amended petition.[10] The Hartford Interstate Support Enforcement Supervisor removed the court order from the website of the State of Connecticut Judicial Branch ("Judicial Branch").[11]

In April 2018, Judge Dee entered a default order for retroactive child support without notifying Leftridge or Heyward.[12] During the course of these proceedings, Gaines appeared *ex*

---

[4] *Ibid.* (¶ 25).
[5] *Id.* at 8–11 (¶¶ 25–30, 34).
[6] *Id.* at 10 (¶ 33). Leftridge does not specify the name of the Assistant Attorney General.
[7] *Id.* at 39 (¶ 153).
[8] *Id.* at 11 (¶ 35).
[9] *Id.* at 12–13 (¶¶ 41–42).
[10] *Id.* at 12 (¶¶ 38–39).
[11] *Ibid.* (¶ 40). Leftridge does not specify the name of the Hartford Interstate Support Enforcement Supervisor.
[12] *Id.* at 13 (¶ 43).

2

*parte* before Judge Dee and made numerous misrepresentations.[13] In August 2018, Uniform Interstate Family Support Act ("UIFSA") Support Enforcement Supervisor Richard Julius falsely certified that Leftridge has been served with process in the Heyward action.[14]

In January 2019, Leftridge asked Gaines for a copy of documents in the Heyward action, but Gaines refused and "became very hostile towards plaintiff in a racially motivated derogatory t[o]ne of voice."[15] Leftridge then filed a misconduct complaint against Gaines with the Connecticut Statewide Grievance Committee, which he followed up with two additional complaints against Gaines.[16]

On May 9, 2019, Family Magistrate Judge Glady I. Nieves modified Leftridge's child support obligations and arrearage to zero because Leftridge became unable to work due to disability.[17] Nieves ordered Gaines and Connecticut Assistant Attorney General Steven Samalot to produce documents relating to the child support proceedings pertaining to Juwan, but they did not do so.[18] Leftridge subsequently served discovery requests on Heyward, who did not complete them because Gaines told her not to.[19] Leftridge also alleges that Gaines and "unknown defendants she involved" "robbed [him] of his favorable May 9, 2019 court ruling."[20]

In September 2019, Family Court Clerk Cassandra Williams, Family Court Clerk Carolyn Anderson, and Gaines disclosed Leftridge's medical records to Judicial Branch employees.[21] Family Court Clerk Manager Leanne Shaughnessy is Williams's and Anderson's

---

[13] *Id.* at 12–15 (¶¶ 38–50).
[14] *Id.* at 16 (¶¶ 55–57).
[15] *Id.* at 18 (¶ 64).
[16] *Ibid.* (¶ 64).
[17] *Id.* at 21–22 (¶¶ 81–85).
[18] *Id.* at 22 (¶¶ 87–88).
[19] *Id.* at 25–27 (¶¶ 98, 102–03), 36 (¶ 141).
[20] *Id.* at 56 (¶ 219).
[21] *Id.* at 28–29 (¶¶ 109, 111).

supervisor.[22] Leftridge filed requests for electronic access and for information relating to his court records, but the Judicial Branch and Williams denied them.[23]

At a December 2019 hearing before Family Magistrate Judge Donald Green, Gaines, Anderson, and Williams made numerous misrepresentations, withheld documents, and refused to produce witness statements.[24] Leftridge also alleges that Williams, Anderson, and unknown employees modified court records and that Gaines, Williams, and Anderson attempted to have Leftridge "arrested, prosecuted, and convicted" for not paying his child support.[25] As a result of the hearing, the Connecticut Department of Social Services ("DSS") reported Leftridge's credit information to credit reporting agencies.[26] The day after the hearing, Judge Green's rulings at the hearing were vacated but Judge Nieves's modification of Leftridge's child support obligation to zero was not restored, which Leftridge alleges was because of "continued lies by [Connecticut Assistant Attorney General] Andrews and Anderson."[27]

In September 2021, Leftridge requested family court records from Child Support Specialist Alyson Saunders, an employee of the Maryland Department of Human Services, who denied his requests.[28] In October 2021, Leftridge attended an appeals hearing before Judge Klau and alleges that Andrews once again made misrepresentations to the court.[29] Later that month, Williams denied Leftridge's request for copies of court documents, and Judicial Branch Deputy Chief Clerk Rene L. Roberston returned his motion for review on the ground that it was premature.[30]

---

[22] *Id.* at 38 (¶ 150).
[23] *Id.* at 29–30 (¶¶ 113, 118), 32 (¶ 124).
[24] *Id.* at 32–36 (¶¶ 125–31, 137–39), 50–55 (¶¶ 191–204, 210, 212–17).
[25] *Id.* at 34 (¶ 133), 40 (¶¶ 156–58), 53–54 (¶¶ 205, 207, 211), 56 (¶ 218).
[26] *Id.* at 34 (¶ 132).
[27] *Id.* at 34–35 (¶ 134), 37 (¶ 144).
[28] *Id.* at 41–42 (¶¶ 162–64).
[29] *Id.* at 44–45 (¶¶ 170–72).
[30] *Id.* at 45 (¶¶ 173–74).

In April 2022, DSS refused to provide Leftridge with documents that form the basis of DSS's negative reports to credit bureaus.[31] DSS also refused to alter the credit information that it reported to credit bureaus.[32]

I previously entered an order to show cause explaining that Leftridge's original complaint did not comply with Rule 8 of the Federal Rule of Civil Procedure. This rule requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." *See Leftridge v. Jud. Branch*, 2022 WL 867543, at *2–3 (D. Conn. 2022) (quoting Fed. R. Civ. P. 8(a)(2) and 8(d)(1)). I also noted that it was unclear whether Leftridge's original complaint complied with Rule 20's limits on permissive joinder of claims against multiple defendants. *See id.* at *3.

Now Leftridge has filed an amended complaint *pro se* and *in forma pauperis* alleging 26 claims against the following defendants: Assistant Attorney General for the Connecticut Office of the Attorney General Andrea Gaines, Assistant Attorney General Joan Andrews, Assistant Attorney General Steven Samalot, UIFSA Support Enforcement Supervisor Richard Julius, Family Court Clerk Carolyn Anderson, Family Court Clerk Cassandra Williams, Family Court Clerk Manager Leanne Shaughnessy, Maryland Department of Human Services Child Support Specialist Alyson Saunders, Chief Clerk of New London and Norwich Judicial Districts David Gage, "unknown employees," the Connecticut Department of Social Services, and the State of Connecticut Judicial Branch.[33] Leftridge names all but the last two defendants in their individual and official capacities.[34]

---

[31] *Id.* at 47–48 (¶ 181).
[32] *Id.* at 48 (¶ 182).
[33] *Id.* at 1; *see id.* at 3–7 (¶¶ 9–19) (defendants' full names and positions); *id.* at 61–94 (¶¶ 237–361) (causes of action).
[34] *Id.* at 1.

*Counts One and Seventeen.* Leftridge alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983.[35]

*Count Two.* Leftridge alleges that the defendants violated the common law by engaging in the spoliation of evidence.[36]

*Count Three.* Leftridge alleges that the defendants engaged in witness tampering, manipulation of court records, and obstruction of court proceedings in violation of the United States Constitution and the Connecticut Constitution.[37] Leftridge does not cite which provision of the United States Constitution the defendants violated, but I will presume that he alleges a violation of his due process rights under the Fourteenth Amendment as enforceable under 42 U.S.C. § 1983.

*Count Four.* Leftridge alleges that the defendants discriminated against him on the basis of his gender and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60 *et seq.*[38]

*Count Five.* Leftridge alleges that the defendants discriminated against him on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*[39]

*Count Six.* Leftridge alleges that Shaughnessy engaged in negligent supervision of her employees Williams and Anderson.[40]

---

[35] *Id.* at 61 (¶¶ 237–39), 75–80 (¶¶ 285–304).
[36] *Id.* at 61 (¶¶ 240–42).
[37] *Id.* at 61–62 (¶¶ 243–45).
[38] *Id.* at 62–63 (¶¶ 246–48).
[39] *Id.* at 63–64 (¶¶ 249–51).
[40] *Id.* at 64–67 (¶¶ 252–54).

*Count Seven*. Leftridge alleges that the Judicial Branch denied Leftridge access to public accommodation by denying him electronic access to the court system.[41] Leftridge does not specify the statute the Judicial Branch violated, but I will presume that he alleges a violation of the ADA.

*Count Eight*. Leftridge alleges that the Judicial Branch denied him equal protection under state law.[42]

*Count Nine*. Leftridge alleges that DSS denied him equal protection under the law, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and violated Title IV-D of the Social Security Act ("SSA"), 42 U.S.C. § 651 *et seq.*[43]

*Counts Ten and Thirteen.* Leftridge alleges that the defendants violated the FCRA and state tort law, and that they discriminated against him on the basis of his age.[44] Leftridge does not specify which law the defendants violated in discriminating on the basis of age, but I will presume that he alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.

*Count Eleven*. Leftridge alleges that the defendants violated his First Amendment right to freedom of speech as enforceable under 42 U.S.C. § 1983.[45]

*Count Twelve*. Count Twelve is titled "pendent cause of action" and repeats several causes of action already alleged in prior counts. It also alleges that the defendants committed extortion and violated section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794.[46]

---

[41] *Id.* at 67–68 (¶¶ 255–57).
[42] *Id.* at 68 (¶¶ 258–60).
[43] *Id.* at 68–69 (¶¶ 261–63).
[44] *Id.* at 69–70 (¶¶ 264–66), 72–73 (¶¶ 273–75). Count Ten also alleges that the defendants violated the ADA, the Civil Rights Act of 1964, and the Connecticut Fair Employment Practices Act—allegations that are duplicative of the allegations in Counts Four and Five.
[45] *Id.* at 70–71 (¶¶ 267–69).
[46] *Id.* at 71–72 (¶¶ 270–72).

*Count Fourteen*. Leftridge alleges that the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.[47]

*Count Fifteen*. Leftridge alleges that the defendants violated the "Consumer Fraud Act."[48] There is no federal statute by that name. Accordingly, I will assume he is trying to allege a claim under Connecticut's consumer-fraud statute: the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq*.

*Count Sixteen*. Leftridge alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.[49]

*Count Eighteen.* Leftridge alleges that the defendants violated the Fourth Amendment as enforceable under 42 U.S.C. § 1983 by prosecuting him without probable cause.[50]

*Count Nineteen*. Leftridge alleges that the defendants violated § 1983 by failing to intervene in the deprivation of his constitutional rights.[51]

*Count Twenty.* Leftridge alleges that the defendants violated § 1983 by conspiring to deprive him of his civil rights.[52]

*Count Twenty-One.* Leftridge alleges that the Judicial Branch and DSS promulgated policies that resulted in the violation of Leftridge's constitutional rights.[53]

*Count Twenty-Two*. Leftridge alleges that the defendants maliciously prosecuted him.[54]

---

[47] *Id.* at 73 (¶¶ 276–78).

[48] *Id.* at 73–74 (¶¶ 279–81).

[49] *Id.* at 74–75 (¶¶ 282–84).

[50] *Id.* at 79–80 (¶¶ 297–304). Count Eighteen also alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983—an allegation that is duplicative of the allegations in Counts One, Three, and Seventeen.

[51] *Id.* at 80–82 (¶¶ 305–12).

[52] *Id.* at 82–83 (¶¶ 313–19).

[53] *Id.* at 83–89 (¶¶ 320–40). Count Twenty-One also mentions policies of three additional agencies—the Maryland Department of Human Services, Montgomery Count Office; the Office of the Connecticut Attorney General; and the Connecticut Interstate Government UIFSA Department—but the complaint does not name these agencies as defendants. *See ibid.*

[54] *Id.* at 89–91 (¶¶ 341–46).

*Count Twenty-Three*. Leftridge alleges that the defendants engaged in intentional infliction of emotional distress.[55]

*Count Twenty-Four*. Leftridge alleges that the defendants conspired to deprive him of his rights in violation of state law.[56]

*Count Twenty-Five*. Leftridge alleges that the supervisor defendants are liable for the misconduct of their employees under the principle of *respondeat superior*.[57]

*Count Twenty-Six* (mislabeled as Count Twenty). Leftridge alleges that the government agencies of which the defendants are members are obligated to indemnify their employees and agents for their torts.[58]

Leftridge seeks compensatory and punitive damages, injunctive and declaratory relief, and attorney's fees and costs.[59] The defendants have moved to dismiss all of Leftridge's claims.[60] For the reasons set forth below, I will grant the defendants' motions.

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[61] The Court must "accept as true all factual allegations and draw from them all reasonable inferences," but it is "not required to credit

---

[55] *Id.* at 91 (¶¶ 347–49).
[56] *Id.* at 91–92 (¶¶ 350–54).
[57] *Id.* at 92–93 (¶¶ 355–57).
[58] *Id.* at 93–94 (¶¶ 358–61).
[59] *Id.* at 94–96.
[60] Doc. #81; Doc. #123.
[61] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### Federal claims against DSS, the Judicial Branch, and the individual defendants in their official capacities

DSS and the Judicial Branch are agencies of the State of Connecticut, and the individual defendants are employees of various state agencies. The Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of subject matter jurisdiction over lawsuits by private citizens against the States, state government entities, and state government officials in their official capacities. *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). "The Eleventh Amendment, however, is not without exception." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 579 F. Supp. 3d 290, 300 (D. Conn. 2022). "Congress may abrogate a state's immunity by statute, a state may waive its immunity, or a state official may be sued in his or her official capacity under the *Ex Parte Young* doctrine." *Ibid.* (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)); *see also Ex parte Young*, 209 U.S. 123 (1908).

I will dismiss Leftridge's claims alleging violations of 42 U.S.C. § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA because they do not fall within any exception to Eleventh Amendment sovereign immunity. First, Congress has not abrogated Eleventh Amendment immunity for claims arising under 42 U.S.C. § 1983, the FCRA, the

10

FDCPA, SSA Title IV-D, and TILA. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979)
(§ 1983); *Badger v. CUNY Graduate Ctr.*, 2023 WL 35223, at *5 (S.D.N.Y. 2023) (citing, *inter
alia*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996)) (FCRA); *Banks v. ACS Educ.*,
638 F. App'x 587, 589 (9th Cir. 2016) (citing 15 U.S.C. § 1692a(6)(C)) (FDCPA); *Parent v.
New York*, 786 F. Supp. 2d 516, 531 (N.D.N.Y. 2011) (SSA Title IV-D), *aff'd*, 485 F. App'x 500
(2d Cir. 2012); *Patel v. Univ. of Md. Coll. Park*, 2023 WL 2023264, at *4 (D. Md. 2023) (citing,
*inter alia*, 15 U.S.C. § 1612(b))) (TILA). The Supreme Court has rejected Congress's attempt to
abrogate state sovereign immunity under the ADEA. *See Kimel v. Fla. Bd. of Regents*, 528 U.S.
62, 66–67 (2000). Nor has Leftridge alleged that Connecticut has waived its immunity with
respect to any of these laws. *Cf. Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 400 (2d Cir.
2017) ("[T]he plaintiff bears the burden of establishing that her claims fall within an applicable
waiver.").

Finally, the *Ex parte Young* exception, which permits prospective injunctive and
declaratory relief against state officials, does not apply. To invoke *Ex parte Young*, a plaintiff
must "(a) allege[] an ongoing violation of federal law and (b) seek[] relief properly characterized
as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618. Leftridge's claims arise out of
alleged actions taken by the defendants in 2005, 2017–2019, and 2021–2022, but Leftridge does
not state what, if any, actions of the defendants constitute ongoing violations of his federal rights.
Nor does his request for injunctive relief—blanket requests that the Court order the defendants to
"fully comply" with various federal laws—shed light on the matter.[62]

As best I can discern, the only ongoing harm Leftridge alleges is DSS's refusal to alter
the credit information it reports to credit bureaus. But the *Ex parte Young* exception to state

---

[62] Doc. #18 at 95–96.

sovereign immunity "has no application in suits against the States and their agencies." *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). And in any event, an injunction must "be 'more specific than a simple command that the defendant obey the law.'" *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011)).

For example, in *Burns v. Rovella*, 2020 WL 12863774 (D. Conn. 2020), the Court denied a plaintiff's "request[] that this court 'prohibit[] defendants from denying his rights protected by the [Family and Medical Leave Act],' and 'denying him his rights … [under] the Fourteenth Amendment Due Process clause of the United [S]tates Constitution." *Id*. at *12. The Court reasoned that "[t]hese are simply requests that the court command the defendant to obey the law, and therefore, are insufficient to seek injunctive relief." *Ibid*. Like the plaintiff in *Burns*, the injunctive relief Leftridge seeks—a court order that defendants obey the law—does not give rise to a valid claim for injunctive relief.

The same goes for Leftridge's request for declaratory relief in the form of a "declar[ation] that the acts of the Defendants alleged in applicable Counts with respect to the acts, policies, practices, and customs deprived Plaintiff of federal rights."[63] "Courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs." *Huminski v. Connecticut*, 2015 WL 1650845, at *5 (D. Conn. 2015). Leftridge's request for declaratory relief "asks the Court only to recognize a past wrong, which, in the context of declaratory relief, does not in itself 'amount to that real and immediate threat of injury necessary to make out a case or controversy.'" *Morales v. City of New York*, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also*

---

[63] *Id.* at 95 (¶ 8).

*H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016) ("[T]he requested declaratory relief is aimed at past conduct, a target that is impermissible."). In short, Leftridge is not entitled to declaratory relief that would fall within the *Ex parte Young* exception to Eleventh Amendment immunity.

Given that no exception to Eleventh Amendment immunity applies, I will dismiss Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities.

The defendants further argue that Eleventh Amendment immunity also bars Leftridge's ADA claims.[64] They cite *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 276 (N.D.N.Y. 2012) and *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001), for the proposition that Title I did not abrogate the states' sovereign immunity.[65] But Title I of the ADA applies to disability discrimination by employers, *see* 42 U.S.C. § 12112(a), and Leftridge does not allege that he was employed by any of the entities involved in the lawsuit. As for Title II, which forbids discrimination by public services, programs, and activities, *see id.* § 12132, the extent to which Congress has abrogated the states' sovereign immunity remains unclear after the Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151 (2006), which held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. *See Schmiege v. New York*, 2022 WL 16922123, at *3 n.6 (W.D.N.Y. 2022) ("Since *Georgia*, courts in this

---

[64] Doc. #81-1 at 8–9; Doc. #123-1 at 15–16.
[65] Doc. #81-1 at 8–9.

Circuit have taken different approaches when faced with the question of whether Congress has

validly abrogated sovereign immunity under Title II.").[66]

But "the Court need not wade into these turbulent constitutional waters." *Matagrano v.*

*N.Y. State Dep't of Corr. & Cmty. Supervision*, 2020 WL 7338586, at *18 (N.D.N.Y. 2020). The

state entity bears the burden of demonstrating that Eleventh Amendment immunity applies. *See*

*Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Because the defendants make no argument and cite no law regarding Title II of the ADA, they

have not carried their burden and I will consider Leftridge's ADA claims on the merits. I will

similarly consider the merits of Leftridge's claims arising under the Rehabilitation Act and Title

VII because the defendants do not contest that Congress waived the states' sovereign immunity

for these two statutes. *See* 42 U.S.C. § 2000d–7 ("A State shall not be immune under the

Eleventh Amendment of the Constitution of the United States from suit in Federal court for a

violation of section 504 of the Rehabilitation Act of 1973."); *Fin. Oversight & Mgmt. Bd. for*

*Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1178 (2023) ("Title VII

of the Civil Rights Act abrogates the immunity of "governments" and "governmental agencies"

from all actions it authorizes.") (citing 42 U.S.C. §§ 2000e(a)–(b)).

I will begin with Leftridge's ADA and Rehabilitation Act claims. "[F]or a plaintiff to

establish a *prima facie* violation under these Acts, she must demonstrate (1) that she is a

qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and

(3) that she was denied the opportunity to participate in or benefit from defendants' services,

programs, or activities, or was otherwise discriminated against by defendants, by reason of her

---

[66] To the extent Leftridge alleges that the defendants violated Title *III* of the ADA, Leftridge fails to state a claim because "Title III is not applicable to public entities." *Morales v. New York*, 22 F. Supp. 3d 256, 266–67 (S.D.N.Y. 2014) (citing cases).

disability." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected on other grounds*, 511 F.3d 238 (2d Cir. 2004).

Leftridge's complaint fails to state a claim under the ADA or the Rehabilitation Act because it does not allege that he was discriminated against because of his disability. Leftridge's claims center on the defendants' "denying equal access to electronic filing, public accommodations and access to Judicial Branch state government' programs and services that was critical to plaintiff being able to file pleadings electronically for his defense of, and presentation of, his case in the Family Support Court."[67] But "[Leftridge's] complaint contains no plausible allegations that … the Defendants' actions were taken *by reason* of his [disability], or even that they were *aware* of his [disability]." *Barone v. Lawyers' Fund for Client Prot.*, 2023 WL 1975783, at *2 (2d Cir. 2023). Without more, Leftridge fails to state a claim under the ADA, *see ibid.*, or the Rehabilitation Act, *see Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009).

Leftridge's Title VII claim fails as well. Title VII makes it "an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Because Leftridge does not allege that he had an employment relationship with any of the defendants, his Title VII claim fails. *See, e.g.*, *Pandozy v. Tobey*, 335 F. App'x 89, 91 (2d Cir. 2009) ("[Plaintiff's] complaint fails to state a cause of action under Title

---

[67] Doc. #18 at 63–64 (¶ 250). Leftridge does not explain what acts the defendants took that violate the RA, but the Court takes them to be the same as those acts that Leftridge alleges violated the ADA. *Cf. Paystrup v. Benson*, 2015 WL 506682, at *11 (D. Utah 2015) (assuming plaintiff's RA claim to be "based on the same actions as the ADA claims" where it was unclear which of defendants' actions were alleged to violate the RA).

VII, since he does not allege an employer-employee relationship between himself and any of the Defendants.").

Accordingly, I will dismiss Leftridge's claims arising under the ADA, the Rehabilitation Act, and Title VII with respect to the agency defendants and the individual defendants in their official capacities. Having already dismissed Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities, I will turn to Leftridge's claims against the individual defendants in their individual capacities.

### *Federal claims against the individual defendants in their individual capacities*

The individual defendants filed motions to dismiss Leftridge's individual-capacity claims on various grounds.[68] For the reasons set forth below, I will grant their motions.

Defendants Anderson, Williams, Shaughnessy, and Gage are state court clerks or supervisors of state court clerks. Defendant Julius is a UIFSA Support Enforcement Supervisor who Leftridge alleges had falsely certified that Leftridge had been served in the 2017 paternity and support action brought by Heyward.

"Courts have extended the absolute judicial immunity afforded judges to individuals, such as prosecutors and witnesses, who perform functions closely associated with the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). "[A]cts arising out of, or related to, individual cases before the judge" are entitled to absolute quasi-judicial immunity because they are considered "judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The relevant inquiry "is the nature and function of the act, not the act itself." *Mireles v. Waco*, 502 U.S. 9, 13 (1991). "A defendant entitled to quasi-judicial immunity loses that privilege only if

---

[68] Doc. #81 at 10–22, Doc. #123 at 9–15, 17–22.

she acts 'in the clear absence of all jurisdiction.'" *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). That a defendant is alleged to have acted erroneously, maliciously, dishonestly, in bad faith, or in excess of her authority does not undermine quasi-judicial immunity. *See ibid.*; *Mireles*, 502 U.S. at 11.

For example, in *Leftridge v. Support Enforcement Services*, 2013 WL 1947174 (D. Conn. 2013), the Court determined that quasi-judicial immunity barred Leftridge's claims against Support Enforcement Officers and court employees for actions related to Leftridge's child custody and child support proceedings "since all of the allegations asserted against these defendants pertain to their performance of official duties integral to the judicial process." *Id*. at *6; *see also Skipp v. Conn. Jud. Branch*, 2015 WL 1401989, at *8 (D. Conn. 2015) ("As all of the challenged actions of court employees were taken in relation to plaintiff's divorce and custody proceedings, the court employees and agents are immune from a claim for money damages.").

Leftridge does not allege that Anderson, Williams, Shaughnessy, Gage, or Julius acted in the clear absence of all jurisdiction. Instead, all of their alleged actions arose out of or related to Leftridge's child support and child custody proceedings before Judge Sweinton, Judge Dee, Judge Nieves, Judge Green, and Judge Klau. Accordingly, quasi-judicial immunity bars Leftridge's claims against these five defendants.

The state prosecutor defendants—Gaines, Andrews, and Samalot—are entitled to absolute immunity as well. "Prosecutors are entitled to absolute immunity with respect to their prosecutorial functions, which include their actions as advocates and when their conduct involves the exercise of discretion." *Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019). For example, in *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986), the Second Circuit held

that an Assistant Attorney General, "representing [the] state as its attorney" in state court, was entitled to absolute immunity. *Id*. at 573. According to the Court, "[t]he fact that [the attorney] may or may not have engaged in questionable or harmful conduct during the course of his representation of the State in that litigation is irrelevant. The immunity attaches to his function, not to the manner in which he performed it." *Ibid*.; *see also Contreras v. Perimenis*, 562 F. App'x 50, 51 (2d Cir. 2014) (affirming district court's finding that Assistant Attorney General for the Connecticut Department of Children and Families "was entitled to absolute immunity because he was sued in his capacity as a government advocate prosecuting child welfare cases").

And again, in *Leftridge v. Support Enforcement Services*., 2013 WL 1947174, the Court determined that absolute immunity barred Leftridge's claims concerning "assistant attorney generals' conduct in carrying out their jobs as assistant attorney generals." *Id.* at *6; *see also Coke v. Samalot*, 2021 WL 4034168, at *7 (D. Conn. 2021) ("As an Assistant Attorney General, Mr. Samalot has immunity while serving in his function as an advocate for the state.").

As with the court-affiliated defendants, Leftridge's allegations regarding Gaines, Andrews, and Samalot pertain exclusively to their roles in Leftridge's child support and child custody proceedings. Absolute prosecutorial immunity thus bars Leftridge's claims against these three defendants.

I turn next to Leftridge's claims against defendant Saunders. Saunders is a Child Support Specialist employed by the Maryland Department of Human Services who Leftridge alleges refused his requests for family court records.

Saunders has moved to dismiss in part for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[69] A court lacks personal jurisdiction over an out-of-state

---

[69] Doc. #123 at 11–14.

defendant if the defendant is not subject under state law to the "long-arm" jurisdiction of the courts of that State, or if exercise of jurisdiction over the defendant would not comport with constitutional principles of fairness and due process. *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). "[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing." *Ibid*. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," *ibid.*, but the Court may dismiss for lack of personal jurisdiction when the plaintiff "failed to controvert the defendants' affidavits showing that the court lacked personal jurisdiction," *Emiabata v. Seton Healthcare Fam.*, 2021 WL 4256846, at *2 (2d Cir. 2021).

Under Connecticut's long-arm statute, "a court may exercise personal jurisdiction over any non-resident individual … who in person or through an agent … commits a tortious act outside the state causing injury to a person or property within the state … if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52–59b(a). The statute also extends to any person or agent who "uses a computer … or a computer network … located within the state." *Ibid*.

Saunders has attached to her motion an affidavit stating that she has been a Maryland resident since 2003, she has worked as a Maryland state employee for the Montgomery County Office of Child Support for the past 15 years, she has never transacted or solicited business in Connecticut, she does not engage in any persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in Connecticut, and she does not use a computer or computer network in Connecticut.[70]

To make out a *prima facie* case, a plaintiff must plead "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffharts*, 604 F. App'x 16, 19 (2d Cir. 2015). Leftridge has not done so. Saunders and Leftridge are Maryland residents, and all of Saunders's alleged actions took place in Maryland in her capacity as an employee for the Maryland Department of Human Services.[71] Moreover, Leftridge does not controvert Saunders's affidavit. He does not allege, even in conclusory fashion, that Saunders satisfies prong (A) or (B) of § 52–59b(a), that Saunders uses a computer or computer network in Connecticut, or that Saunders's actions otherwise satisfy Connecticut's long-arm statute. Because there is no statutory long-arm jurisdiction over Saunders, I need not consider whether exercising jurisdiction over Saunders would be consistent with constitutional due process.

Even if the Court had personal jurisdiction over Saunders, dismissal would nonetheless be proper because Leftridge does not state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) and because the complaint does not comply with Rule 8's pleading requirements. Leftridge's only allegations against Saunders—appearing in 3 of the complaint's

[70] Doc. #123-3 at 1–2 (¶¶ 1–2, 5).
[71] *See* Doc. #18-1 at 1, 7; Doc. #137 at 9 (Leftridge's opposition to defendants' motion to dismiss stating that "[t]he plaintiff[] … live[s] in the State of Maryland").

20

361 paragraphs—are that Saunders refused to provide him with family court records. Leftridge does not explain how Saunders's conduct violated state or federal law. Indeed, none of the 26 counts in his complaint mention Saunders at all. Instead, some counts mention defendants other than Saunders, and the remaining counts refer collectively to the "Defendants," of whom there are at least 11.

Drafting a complaint in this way runs afoul of Rule 8's requirement that each defendant have "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, 422 F. App'x 61, 62–63 (2d Cir. 2011); *see also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain … (2) a short and plain statement of the claim showing that the pleader is entitled to relief."). A complaint does not satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (affirming dismissal of "shotgun pleading" complaint on Rule 8 grounds where it was "nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief"). Because the Court lacks personal jurisdiction over Saunders and Leftridge does not state a plausible or Rule-8-compliant claim for relief against her, I will grant Saunders's motion to dismiss.

In sum, I will grant the individual defendants' motions to dismiss Leftridge's claims against them in their individual capacities. With no federal claims remaining against the defendants in either their individual or official capacities, the Court finds it unnecessary to address the defendants' additional arguments for dismissal on grounds of qualified immunity, litigation privilege, the *Rooker-Feldman* doctrine, or improper service of process.

*Federal claims against unknown employees*

Leftridge mentions "unknown employees" at various points in his complaint, whom he identifies as either employees of the Judicial Branch or the Executive Branch of Connecticut.[72] As explained above, Rule 8 requires that the complaint gives each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad*, 422 F. App'x at 62–63. Naming "unknown employees" or "unknown defendants" does not comply with Rule 8's fair notice requirement where, as here, the allegations are so vague as to make it impossible to identify them. *See, e.g.*, *Matthews v. NYPD*, 2023 WL 3505634, at *1–2 (S.D.N.Y. 2023) (dismissing *pro se* complaint against "unknown employees" because "Plaintiff's complaint does not include allegations about 'unknown employees' that are sufficient to put them or the Court on notice of her claims against them. She also does not plead facts that are sufficient to identify such Defendants."); *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) ("Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense.").

In any event, there are no freestanding allegations of wrongdoing by the unknown employees. All mentions of unknown employees are tacked on to allegations against other employees of the Judicial Branch and the Office of the Connecticut Attorney General. Having already concluded that all claims against the named employees fail, I will dismiss the claims against the unknown employees on the same grounds. *See, e.g.*, *Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269–70 (S.D.N.Y. 2000) ("I assume … that the theory of liability

---

[72] Doc. #18 at 58 (¶¶ 225–26).

[against the John Doe defendants] is the same as that pled against [named defendants]. As these claims have been dismissed, there is no reason to allow the [complaint] to stand against the Does. Therefore, the claims against John Does 1 through 50 are also dismissed.").

### State law claims

Having dismissed Leftridge's federal law claims, I turn to his state law claims. Leftridge argues that the Court has diversity jurisdiction over his state law claims because "[t]he plaintiff[] and some of the defendants to this case live in the State of Maryland."[73] *See* 28 U.S.C. § 1332 (federal diversity jurisdiction statute). But diversity jurisdiction exists only if there is "complete" diversity among the opposing parties—in other words, only if the plaintiff is a citizen of a different state than all of the defendants. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998); *Strawbridge v. Curtis*, 3 Cranch 267 (1806) (Marshall, C.J.). And as explained above, both Saunders and Leftridge are Maryland residents. In the absence of federal diversity jurisdiction, and because there are no facially plausible federal claims against the defendants, I conclude that the state courts of Connecticut are best positioned to address Leftridge's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013); *Williams v. Katz*, 2022 WL 3646200, at *6 (D. Conn. 2022). Accordingly, I decline to exercise supplemental jurisdiction over Leftridge's state law claims, which I will dismiss without prejudice to Leftridge's right to seek any relief that may be available in state court.

---

[73] Doc. #137 at 9.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss (Doc. #81, Doc. #123). In light of the granting of the motions to dismiss, the Court DENIES as moot all other pending motions (Docs. #136, #138, #140, and #150). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 30th day of June 2023.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge